

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-2008

# USA v. Wood

Precedential or Non-Precedential: Precedential

Docket No. 06-3812

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Wood" (2008). *2008 Decisions.* Paper 1097.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1097

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3812

UNITED STATES OF AMERICA

v.

GARY WOOD,
Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 05-cr-00057E)
District Judge:  Honorable Sean J. McLaughlin

Argued January 28, 2008
Before:  SCIRICA, Chief Judge, and RENDELL,
Circuit Judges and THOMPSON, *District Judge.

  * Honorable Anne E. Thompson, Senior Judge of the United States District Court for the District of New Jersey, sitting by designation.

Karen S. Gerlach, Esq.  **[ARGUED]**
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA  15222
 *Counsel for Appellant*

Robert L. Eberhardt, Esq.
Laura S. Irwin, Esq.   **[ARGUED]**
Office of U. S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
 *Counsel for Appellee*

OPINION OF THE COURT

THOMPSON, <u>District Judge</u>.

Gary Wood ("Wood") appeals the sentence imposed by the District Court in August 2006, following his guilty plea for bank robbery in violation of 18 U.S.C. § 2113(a).  His appeal challenges the computation of his criminal history score based on the "relatedness" of certain of his prior convictions.  For the reasons below, we will affirm the sentence imposed by the District Judge.

When Wood pled guilty and was sentenced for the instant offense of bank robbery in violation of 18 U.S.C. § 2113(a), his Presentence Investigation Report ("PSR") revealed in paragraphs 33, 34, and 35 that he had previously been convicted of three crimes that Probation considered to be "related" for purposes of § 4A1.2(a)(2). These three convictions are at the center of this appeal, and we briefly summarize each one.

A.      Criminal Conspiracy

Wood was arrested in November 1993 for conspiring with another person to receive stolen handguns on two separate dates in August of 1993. He pled guilty to two counts of criminal conspiracy in February 1994. He was sentenced to two years' probation; he violated the probation terms and was later resentenced to 6 to 24 months in custody. (PSR ¶ 33.)

B.      Burglary of a Residence

Some time between July 31, 1993 and August 1, 1993, Wood broke open a rear window of a residence, and stole a stereo and an answering machine. For this, he received a sentence of 8 to 24 months in custody. (PSR ¶ 34.)

C.      Burglary of a Commercial Office

Some time between August 20, 1993 and August 23, 1993, Wood entered an office of a business through a rear window, and removed a bag of cash totaling approximately $2,429. For this, he was sentenced to 8 to 24 months in custody. (PSR ¶ 35.)

Wood was charged separately for the above offenses. In the charging instruments, the Erie County prosecutor provided notice that the two burglaries would be tried together, though no formal consolidation order was ever entered. In February 1994, Wood pled guilty to all three offenses before a judge in the Erie County Court of Common Pleas. In March 1994, the same judge sentenced Wood consecutively for the offenses.

When preparing the PSR for the instant offense, the Probation officer deemed the above convictions "related," and assigned them an aggregate of three criminal history points. Next, the PSR added one point because Probation determined the burglary of the commercial office at ¶ 35 to be a crime of violence. A prior conviction for larceny that is not the subject of this appeal was assigned another point. Finally, the PSR added two points because Wood committed the instant offense less than two years after his release from custody for a parole violation. Thus, the PSR calculated Wood's criminal history score to be seven points, which placed Wood in Category IV. This, in conjunction with an offense level of 19, gave Wood a Guidelines range of 46 to 57 months. The Government, however, objected, contending that the three convictions were for unrelated offenses, and that each should be assigned three criminal history points. The Government's revision would place Wood in Category V. Wood also objected to the PSR, contending that a burglary of a non-dwelling should not be considered a crime of violence. The PSR was subsequently revised to credit Wood's argument, and reject the Government's objection, and reduced Wood's criminal history points to six. This placed Wood in Category III. This, in conjunction with his offense level of 19, projected a custodial range of 37 to 46

4

months.

At sentencing, a defense attorney who was familiar with state court procedures and document notations in Erie County indicating consolidation of criminal cases, testified that the burglary charges effectively were consolidated. Nevertheless, the District Court agreed with the Government that the offenses were not related primarily because they had separate victims, different facts, and lacked a consolidation order. The District Judge concluded that the pleas and sentencing were handled together for administrative convenience and likely for Wood's benefit. The District Court assigned three criminal history points to Wood for each of these offenses, placing him in Category V. This, computed against an offense level of 19 for the instant offense, resulted in a Guidelines range of 57 to 71 months. Therefore, the District Court sentenced Wood to 60 months, to be followed by a three-year term of supervised release, and ordered him to pay $1410 in restitution.

Wood now appeals the District Court's computation of his criminal history score under § 4A1.2(a)(2) of the Guidelines, based on its finding that his prior offenses were not related, and asks this Court to vacate his sentence and remand for resentencing. During the pendency of this appeal, the United States Sentencing Commission promulgated an amendment to § 4A1.2(a)(2) (the "Amendment"), which took effect on November 1, 2007. Following oral argument, the Court asked the parties to provide supplemental briefing on the impact of the Amendment on the computation of Wood's criminal history score, and the issue of whether the Amendment applied retroactively to Wood's sentence.

5

## STANDARD OF REVIEW

When reviewing a sentence, an appellate court first ensures that the district court "committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." Gall v. United States, — U.S. —, 128 S. Ct. 586, 597 (U.S. Dec. 10, 2007). Assuming that no significant procedural error has occurred, the appellate court then considers the substantive reasonableness of the sentence by reviewing it for abuse of discretion. Id. Where, as here, a challenge is made to the calculation of the Guidelines range, the Court reviews the District Court's interpretation of the Sentencing Guidelines *de novo*, United States v. Pojilenko, 416 F.3d 243, 246 (3d Cir. 2005), and scrutinizes any findings of fact used in the calculation for clear error. United States v. Wise, 515 F.3d 207, 217 (3d Cir. 2008).

## CALCULATION OF CRIMINAL HISTORY SCORE

Wood argues that the District Court disregarded the plain language of § 4A1.2(a)(2) and its corresponding Application Note 3 in determining that his prior convictions were not "related." He contends that, because he was sentenced for all three offenses on the same date, before the same judge, the offenses should be considered "consolidated" for the purposes of sentencing within the meaning of Application Note 3. Further, he argues that the Amendment should apply retroactively. The Government contends that the District Court properly used a functional consolidation analysis, in accordance with case law, in determining whether Wood's prior convictions were related, and that the Amendment effects a substantive

6

change in the calculation of the criminal history score, and, therefore, should not be applied retroactively.

Generally, we review a sentence under the version of the Guidelines in effect at the time of sentencing. Id. at 220 (citing United States v. Diaz, 245 F.3d 294, 300-01 (3d Cir. 2001)). However, a subsequent revision to the Guidelines may be applied on review if it "'merely clarifies the law in existence at the time of sentencing,' as opposed to working a substantive change in the law." Id. (quoting Diaz, 245 F.3d at 301).

A.      GUIDELINE AT THE TIME OF SENTENCING

The relevant provision of the version of the Guidelines in effect at the time of Wood's sentencing states:

> Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c).

U.S.S.G. § 4A1.2(a)(2). Application Note 3 defines "related" cases:

> Related Cases. Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest . . . . Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the

7

same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger he presents to the public.

U.S.S.G. § 4A1.2, comment. n.3. Based on the record before the Court, it is undisputed that Wood's commission of the prior offenses at issue was not separated by intervening arrests, nor did they occur on the same occasion or as part of the same scheme or plan. Therefore, the only issue we have to consider is whether the District Court properly applied § 4A1.2(a)(2) in finding that Wood's prior convictions were not "consolidated" despite the fact that he was sentenced for these offenses on the same day before a single judge.

Other courts that have addressed this issue have concluded that, absent a formal consolidation order, factually and temporally distinct offenses are not considered related, notwithstanding the fact that a defendant may have been sentenced for the offenses at the same time. See United States v. Correa, 114 F.3d 314, 317 (1st Cir. 1997) (requiring "actual order of consolidation or . . . some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that sentence was imposed

by the same judge at the same time."); United States v. Allen, 50
F.3d 294, 297 (4th Cir. 1995) (holding that Application Note 3
required either formal consolidation order or factual relationship
among prior offenses); United States v. McAdams, 25 F.3d 370,
375-76 (6th Cir. 1994) (affirming district court's finding that
factually distinct offenses, prosecuted under different docket
numbers, were not consolidated despite simultaneous imposition
of sentences); United States v. Lopez, 961 F.2d 384, 386-87 (2d
Cir. 1992) (holding that two prior convictions were not related
notwithstanding the fact that same judge sentenced defendant
concurrently on the same date).  To consider only whether
sentences for multiple convictions were handed down the same
day by the same judge, as Wood urges us to do, would place
those defendants whose offenses were sentenced together in a
far better position with respect to calculation of their criminal
history scores under the Guidelines than those who did not enjoy
similar fortuity.  Such a disparity between otherwise similarly
situated, repeat offenders, would appear to be without any
rational justification.

Thus, we adopt the approach utilized by other circuits and
by the District Court in this case, and hold that, the imposition
of sentences for multiple offenses at the same time by the same
judge does not render the cases "consolidated for sentencing,"
and, therefore, related within the meaning of § 4A1.2(a)(2), in
the absence of either a formal consolidation order or a close
factual relationship between the offenses.

Here, the District Court found that the three prior
convictions at issue were factually distinct.  They were different
crimes involving separate victims, different types of goods

9

stolen, and occurred on separate dates. The offenses were charged under distinct instruments, bearing different docket numbers. No formal consolidation order was ever issued. Further, the Erie County judge imposed consecutive sentences. We do not find the District Court's findings of fact with respect to Wood's prior convictions to be in error.

B.      AMENDED GUIDELINE

The Amendment now provides, in part:

(2) If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence . . . If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2). Application Note 3 now reads:

Upward Departure Provision. - Counting multiple prior sentences as a single sentence may result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that the defendant presents to the public. In such a case, an upward departure may

be warranted.

Wood argues that the Amendment merely clarifies the method a court uses to determine whether prior offenses are related, and eliminates any ambiguities inherent in the prior version of the Guidelines by requiring only that the sentences be imposed on the same day. Thus, Wood argues that we should apply the Amendment retroactively, and that we need not inquire into whether a formal consolidation order was issued in prior proceedings. The Government, on the other hand, argues that the Amendment effects a substantive change in the calculation of criminal history scores. Far from clarifying ambiguous terms, the Amendment replaces previously undefined terms such as "related cases" with "prior sentences," which the Government argues has the effect of implementing a new approach to assessing a defendant's criminal background.

We compare the texts of the prior Guideline provision and the Amendment in order to analyze the effect, if any, the latter has on computing a defendant's criminal history score. The provision in effect at the time of Wood's sentencing distinguishes between unrelated and related cases, and defines relatedness with respect to similarity in either time, facts, or judicial economy. In contrast, the Amendment has not incorporated the concept of "related" offenses into the main body of § 4A1.2(a)(2). Instead, the Amendment contemplates that prior sentences are to be considered as one if the underlying offenses either share the same charging instrument or were sentenced together on the same day. Absent from the Amendment is any consideration of whether the offenses in question share any temporal proximity or factual relationship.

11

The Amendment also fails to mention the notion of consolidation. While the upward departure provision contained in the new Application Note 3 provides a sentencing judge with discretion to count prior sentences separately if the score does not accurately capture the severity of a defendant's history, we find that, on the whole, the Amendment introduces a new treatment of prior convictions that does not turn on relatedness, but rather on factors that would be obvious from the record, such as whether the offenses were charged together or were sentenced together. Therefore, we hold that the amended version of § 4A1.2(a)(2) effects a substantive change, and, therefore, we will not apply it retroactively to Wood's sentence.

Having found no error in the District Court's interpretation of § 4A1.2(a)(2) at the time of sentencing or with its findings of fact with respect to Wood's prior convictions, we will affirm the sentence.

RENDELL, *Circuit Judge* - dissenting.

As is acknowledged by the majority opinion, Wood was sentenced on the same day for all three offenses. Two of the offenses were consolidated for trial. All three were consolidated for plea and sentencing. The District Court found that the three offenses were consolidated for sentencing in state court. Both the government and the defendant agree that the offenses were consolidated. Notwithstanding this, the majority concludes that the offenses were somehow not consolidated and therefore not "considered related" under the Guideline. I

12

respectfully disagree.

At issue here is U.S.S.G. § 4A1.2(2), which provides that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." The Application Note 3 to U.S.S.G. § 4A1.2(2) defines "[r]elated cases." Provided there is not an intervening arrest separating the offenses, "prior sentences are *considered related* if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) *were consolidated for trial or sentencing*." U.S.S.G. § 4A1.2, cmt. n.3 (emphasis added). The Application Note continues:

> The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, *if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as related because the cases were consolidated for sentencing*, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes. In such circumstances, an upward departure may be warranted.

13

*Id*. (emphasis added).

In coming to the conclusion that the third definition of "relatedness," namely that the cases were consolidated for trial or sentencing, was not fulfilled, the majority opinion ignores the record. With respect to U.S.S.G. § 4A1.2(2)'s application to the present case, the District Court here was presented with unrebutted testimony that, in Pennsylvania, consolidation is the rule, not the exception, and the procedure that is followed in order to consolidate cases does not include an actual court order of consolidation. On the issue of whether the offenses had been consolidated for trial or sentencing, the Court heard from John Moore, an attorney who has engaged in criminal practice in Erie County for almost thirty years and represented Wood with regard to these three prior convictions. He testified that, when the District Attorney's office gives notice pursuant to Pennsylvania Rule of Criminal Procedure 582(B)(1) (formerly Rule 1127(B)(1)) that an offense in one information will be tried with offenses in a separate information, the two cases are joined for trial. An order of consolidation is never entered. Under Pennsylvania rules, a signed order is not required to consolidate cases where notice of consolidation is filed with the clerk and served on the defendant prior to arraignment. Rather, the consolidation is accomplished by way of a checkoff notice of joint trial and/or sentencing. Informations Nos. 2749 and 2750 were checked off to give notice under Rule 1127(B)(1) that the offenses in PSR paras. 34 and 35 would be tried together. If there had been a trial, the two cases would have kept their separate docket numbers, although tried together. If notice is not given by the time of arraignment, the Commonwealth of Pennsylvania would still have the right to consolidate the

14

charges, but Moore had never seen a case where that was done. Moore testified that he had never seen a separate order by an Erie County Court of Common Pleas judge indicating that cases would be tried together.

In Erie County Court of Common Pleas, it is standard procedure to consolidate all cases which are pending in that court against a single defendant for plea and/or sentencing. Moore testified that the routine method for consolidating cases for plea or sentencing is through a plea agreement that lists all informations in one agreement, sets the standards for the plea, and schedules sentencing in front of the same judge. The judge then signs the plea sheet, approving and accepting the plea. Under Pennsylvania Rule of Criminal Procedure 701, the defendant has a right to plead guilty to other offenses that he committed within the jurisdiction of the sentencing court; consolidation for sentencing is mandatory upon the defendant's request. The comment to the Rule states that "[t]he objective of this rule is to enable consolidation of all outstanding charges within the jurisdiction of the sentencing court for sentencing at one time." Pa. R. Crim. Pro. 701 cmt.

The District Court accepted this testimony, noting that "the two burglary convictions were in fact consolidated under Pennsylvania practice" and that the state court judge's "approval of the plea agreement by virtue of which the gun charge was lumped with the burglary charges at sentencing represented a 'consolidation' for sentencing purposes." (App. 309). That should have ended the inquiry. The Application Note directs the court to consider "related" offenses that were "consolidated for trial or sentencing." Once a determination has been made that

15

the offenses were consolidated, they must be "considered related" and counted as one.

However, the District Court then proceeded to consider whether the offenses were in fact functionally or factually related, concluding they were not. The judge stated "I believe it is appropriate for the court to critically examine, in the absence of a formal consolidation order, the relatedness of crimes 'that were consolidated for sentencing.' [sic] To determine whether the crimes were lumped together for administrative convenience or other purposes quite unrelated to any factual or legal similarities between them." (App. 308-09).

I submit that this last step was error. The plain language of the provision makes clear that the test is not whether offenses were consolidated *because* they are related. Rather, offenses are "considered related" for the purpose of the Guideline *because* they were consolidated for trial or sentencing. The District Court here added a "purpose" requirement, such that where offenses have been consolidated because they are adequately factually similar, they are "related," but if they have been consolidated for administrative convenience, they are not "related." This interpretation reads the "or" in the Application Note's definitions of what qualifies offenses as "related" as an "and," incorrectly requiring that at least two of the three tests are met. This defies the plain language of the provision, invites unwarranted speculation and conjecture as to the reasoning behind each consolidation, and complicates an otherwise simple inquiry.

The District Court here acknowledged that the offenses were indeed consolidated for sentencing. The Court erred, however, in insisting upon an order of consolidation in a court system which does not effectuate consolidation through an order, and in looking beyond the issue of consolidation to determine actual "relatedness." The majority's opinion has compounded that error by disregarding the District Court's finding here–that the cases had in fact been consolidated. Moreover, the majority's opinion penalizes any defendant who has had factually dissimilar offenses consolidated for trial or sentencing in the Commonwealth of Pennsylvania, because, by contrast to courts in other states, there will never be a formal order of consolidation.

As the majority opinion notes, it seems strange that the fact that many offenses were consolidated for sentencing would result in a lower criminal history score. However, the Guideline itself acknowledges this and notes: "there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public." U.S.S.G. § 4A1.2, cmt. n.3. I submit that the only way the definition could be "overly broad" is if it includes offenses as related that would otherwise be viewed as separate and quite different. Admittedly, counting offenses consolidated for trial or sentencing as "related" is a necessarily artificial test that may well group very different offenses and conduct. The Guideline recognizes this. It makes very explicit that an upward departure may be warranted in some situations precisely because "if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the

17

resulting sentences were treated as related because the cases were consolidated for sentencing," his criminal history score may not reflect his criminal past. U.S.S.G. § 4A1.2, cmt. n.3. The interpretation adopted by the majority effectively reads this commentary out of the provision.

Since Wood's sentencing, the Guideline has been amended to make clear that: "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." While I agree that the amendment to this Guideline was substantive in that it did more than clarify, nonetheless its language and the reason for its adoption tend, I believe, to support my view that the test for considering offenses to be related is a straightforward one, to be applied without consideration of how "related" the offenses are. Specifically, the rationale for its adoption was the significant amount of litigation and confusion over the meaning of "related" and the consolidation provision in particular. U.S.S.G. § 4A1.2, 2007 Amendments, Reason for Amendment (effective Nov. 1, 2007). Notwithstanding this, the majority's analysis perpetuates the confusion over the term "related." I submit the Guideline was clear before and is even clearer now.

Consolidated means consolidated. Once a court determines that the offenses were consolidated under the laws of the relevant jurisdiction, the inquiry comes to an end. Here, in light of the District Court's determination that the cases were consolidated for trial and sentencing, the offenses should have been considered related pursuant to U.S.S.G. § 4A1.2(2).

18